ADWAR IVKO
Polina Ivko
515 Madison Avenue, 6th Floor
New York, NY 10022
Phone: (212) 725-1818
Email: polina@adwarivko.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID BRAVO, AND JEAN ALBERT RENAUD

(f/k/a ALBERT RENAUD WHITE)

                                 Plaintiffs,

          -against-

SONY MUSIC PUBLISHING LLC, SONY MUSIC
ENTERTAINMENT, WARNER CHAPPELL MUSIC,
INC., UNIVERSAL MUSIC PUBLISHING
INTERNATIONAL LIMITED, BAD BOY RECORDS,
LLC, PHALON ANTON ALEXANDER p/k/a JAZZE
PHA, SEAN JOHN COMBS p/k/a DIDDY, CALVIN
CORDOZAR BROADUS JR. p/k/a SNOOP DOGG,
CORNELL IRAL HAYNES JR. p/k/a NELLY, THE
ESTATE OF CHRISTOPHER GEORGE LATORE
WALLACE p/k/a THE NOTORIOUS B.I.G., and THE
ESTATE OF ANGELA LAVERNE STONE p/k/a ANGIE
STONE

                               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.


**COMPLAINT**


**JURY TRIAL DEMANDED**

       Plaintiffs David Bravo ("Bravo") and Jean Albert Renaud ("Renaud," and collectively with

Bravo, "Plaintiffs"), by their attorneys, Adwar Ivko, as and for their Complaint against defendants

Phalon Anton Alexander (p/k/a Jazze Pha), Bad Boy Records, LLC, Universal Music Publishing

International Limited, Sony Music Entertainment, Sony Music Publishing LLC ("Sony

Publishing"), Warner Chappell Music, Inc., Sean John Combs (p/k/a Diddy), Calvin Cordozar

1

Broadus Jr. (p/k/a Snoop Dogg), Cornell Iral Haynes Jr. (p/k/a Nelly), the Estate of Christopher George Latore Wallace (p/k/a The Notorious B.I.G.), and the Estate of Angela Laverne Stone (p/k/a Angie Stone) (collectively, "Defendants") herein, allege as follows:

## NATURE OF ACTION

1. This case embodies a classic "David versus Goliath" struggle. Plaintiffs are independent, everyday creators seeking to recover their rightful compensation that has been unlawfully diverted to billion-dollar record labels, global music publishers, and international recording artists, producers and songwriters. Plaintiff David Bravo is a 73-year-old working keyboardist and composer who resides in Long Island, New York. Plaintiff Jean Albert Renaud (formerly known as Albert Renaud White) is an 84-year-old United States Army veteran who lives frugally in Baltimore, Maryland. Together, they bring this action to protect their life's work from blatant corporate theft.

2. This is a copyright infringement and a breach of contract action brought by Plaintiffs David Bravo and Jean Albert Renaud against Defendants Phalon Anton Alexander (p/k/a Jazze Pha), Bad Boy Records, LLC, Universal Music Publishing International Limited, Sony Music Entertainment, Sony Music Publishing LLC, Warner Chappell Music, Inc., Sean John Combs (p/k/a Diddy), Calvin Cordozar Broadus Jr. (p/k/a Snoop Dogg), Cornell Iral Haynes Jr. (p/k/a Nelly), the Estate of Christopher George Latore Wallace (p/k/a The Notorious B.I.G.), and the Estate of Angela Laverne Stone (p/k/a Angie Stone) to redress Defendants' willful and unauthorized use of the musical composition entitled "Skatin'" (officially registered as "Skating"), of which Plaintiffs are the beneficial owners. Defendants have engaged in the unauthorized creation, production, manufacture, distribution, and commercial exploitation of the following unauthorized derivative musical compositions and sound recordings: (i) "Nasty Girl," performed

and recorded by recording artists Notorious B.I.G., Diddy, and Nelly; and (ii) "I Wanna Thank Ya," performed and recorded by recording artists Angie Stone and Snoop Dogg.

3. To write and record these infringing tracks, Defendants intentionally and unlawfully sampled the harmonic, rhythmic, and melodic underpinning of Plaintiffs' work to serve as the complete musical backing track over which new vocal melodies and rap verses were composed. Defendants did not seek or receive permission to copy, interpolate, or sample any portion of "Skatin'."

4. The substantial similarities between "Skatin'" and the infringing works surpass the realm of generic coincidence or an attempt to evoke a musical era. As detailed in the expert report by renowned musicologist Thomas Z. Shepard, it is "inarguable" that Defendants' tracks represent a "literal re-recording and re-use" of Plaintiffs' original composition. Specifically, Defendants unlawfully copied a constellation of distinctive and important compositional elements, including the exact 4-bar, 4/4 time signature structure and the fundamental progression from the A-flat major 7th chord to the G7 chord.

5. Defendants have since exploited these unauthorized derivative works to staggering commercial success, generating over 1 million CD sales and 274 million digital streams on Spotify alone for the track "Nasty Girl," all while systematically denying Plaintiffs their rightful songwriter credit, royalties, and compensation. Because Plaintiffs were completely removed from the rap and hip-hop markets and reasonably relied on their publisher to protect their catalog, Plaintiffs did not discover this infringement until May 2024.

6. Finally, Plaintiffs assert claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty specifically against their music publisher, Sony Publishing. Despite transferring legal title to the copyright to Sony

Publisher's predecessor-in-interest, Plaintiffs retained substantial beneficial interests in "Skatin'" through their right to receive ongoing royalties. However, Sony Publishing has flagrantly disregarded its legal, contractual, and ethical obligations to protect the legal interests of Plaintiffs' works. Specifically, under Paragraph 11 of the Songwriter's Agreement between Plaintiffs and Sony Publishing's predecessor, Kenya Music, Inc. dated February 1980 ("1980 Songwriter's Agreement;" attached to the Complaint as **Exhibit A**), Sony Publishing is contractually obligated to initiate and prosecute any legal action against alleged infringers at its "sole expense." Most egregiously, Sony Publishing has explicitly admitted that it has a "conflict of interest" in advocating for Plaintiffs, willfully choosing to prioritize the highly lucrative revenue streams of the "Nasty Girl" credited writers, five or more of whom Sony Publishing also represents, over its fiduciary duty and express contractual obligations to Plaintiffs. By intentionally aligning itself with the infringers to the direct detriment of its own creators, Sony Publishing has forced Plaintiffs to bring this action to protect their own rights and legacy. Plaintiffs' claims against the remaining publisher defendants, Warner Chappell Music, Inc. and Universal Music Publishing International Limited, are solely for copyright infringement arising from their unauthorized administration and commercial exploitation of the infringing works.

7.      Defendants' conduct is unlawful under the United States Copyright Act. Neither the world's largest music publishers, billion-dollar record labels, nor internationally renowned recording artists or songwriters are above the law.

### JURISDICTION AND VENUE

8.      The jurisdiction of this Court with respect to Plaintiffs' copyright infringement claims is based upon 28 U.S.C. §§ 1331 and 1338(a), in that the controversy arises under the

Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*), which is within the exclusive jurisdiction of the federal courts.

9. This Court has supplemental jurisdiction over Plaintiffs' state-law claims against Defendant Sony Publishing for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty pursuant to 28 U.S.C. § 1367(a). These state-law claims arise out of the same matters and transactions as the federal copyright claims, such that they form part of the same case or controversy under Article III of the United States Constitution.

10. This Court has personal jurisdiction over all Defendants because, upon information and belief, Defendants reside in, may be found in, and/or conduct systematic and continuous business in this District. Furthermore, the Infringing Defendants have committed, and continue to commit, unlawful acts of copyright infringement in this District by, among other things, authorizing, reproducing, distributing, selling, and commercially exploiting the infringing works "I Wanna Thank Ya" and "Nasty Girl" to consumers within this District.

11. The venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because the Defendants, or their agents, reside or may be found in this District, and/or a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

12. Plaintiff David Bravo is a 73-year-old keyboardist and composer residing in Long Island, New York. For the past 45 years, Mr. Bravo has worked tirelessly as a self-employed, independent musician, scraping together a living by playing weddings, local venues, and occasional short tours with artists such as Bo Diddley, Jack Bruce, and Harry Belafonte. Today, Mr. Bravo suffers from severe arthritis in his dominant hand, which significantly impairs his ability to play the keyboard and earn an income. The unauthorized exploitation of his work, and the denial

of his rightful songwriter credit on a massive international hit like "Nasty Girl," robbed him of crucial career-advancing opportunities and the financial security he desperately needs in his later years. To fight this blatant theft, Mr. Bravo has been forced to drain his personal life savings, which were meant to cover his daily living expenses, just to pay out-of-pocket for expert musicologists and legal counsel.

13.    Plaintiff Jean Albert Renaud is an 84-year-old injured United States Army veteran and lifelong musician residing in Baltimore, Maryland. Prior to a legal name change in September 1980, Mr. Renaud was known as Albert Renaud White (the 1980 Decree for Change of Name is attached hereto as **Exhibit B**). Under his former name, he co-authored and registered the musical composition "Skatin'" and executed the 1980 Songwriter's Agreement at issue in this action.

14.    Mr. White voluntarily enlisted in the Army in 1960, serving in Japan and Germany. Following his honorable service, Mr. White built a career as a humble singer, songwriter, and producer, opening for the Jackson 5 and writing for icons like Lou Rawls and Teddy Pendergrass. Despite his industry success and a contract with Motown Records, Mr. White selflessly set aside his music career to return to Baltimore to care for his family in need. He later dedicated his life to community service, founding a 501(c)(3) nonprofit focused on wild horse conservation and youth HIV/AIDS prevention.

15.    Today, despite co-creating a significantly valuable musical composition, Mr. White lives frugally on a very low Social Security income with no savings or assets. His daily life is a financial struggle, and he relies entirely on veteran support. Furthermore, Mr. White suffers from severe, daily mobility issues resulting from an accident that left his leg permanently reconstructed with metal hardware. He lacks the resources to fight this battle alone and relies on Mr. Bravo to advance the legal and expert fees out-of-pocket just to bring this action.

16.     Together, Mr. Bravo and Mr. White are the sole joint authors and beneficial owners of the original musical composition "Skatin'" (officially registered as "Skating"). Despite transferring legal title of the copyright to Sony Publishing's predecessor-in-interest, Plaintiffs retained substantial beneficial interests in "Skatin'" through their right to receive ongoing royalties. As independent, everyday creators, they lack the vast financial resources and corporate machinery of the Defendants. For Mr. Bravo and Mr. White, watching a lifetime of hard work and talent be undervalued and exploited by billion-dollar publishers and mega-stars has been deeply distressing. Furthermore, Sony Publishing's bad-faith refusal to advocate for them, has been both financially and emotionally draining. They bring this action to protect their life's work and to recover the rightful compensation that has been unlawfully diverted to global music publishers and international recording artists.

17.     Defendant Sony Publishing is a corporate entity and music publisher with its principal place of business in New York, NY. As successor-in-interest to Kenya Music, Inc., Sony Publishing administers the musical composition "Skatin'" and is a party to the 1980 Songwriter's Agreement at issue in this action.

18.     Defendant Sony Music Entertainment is a corporate entity and record label with its principal place of business in New York. Upon information and belief, Sony Music Entertainment (as the successor-in-interest to J Records and RCA Records) manufactured, distributed, and commercially exploited the infringing sound recording "I Wanna Thank Ya."

19.     Defendant Warner Chappell Music, Inc. is a corporate entity and music publisher. Upon information and belief, Warner Chappell Music, Inc. has a regular and established place of business in New York, conducts systematic and continuous business in this District, and serves as

7

a publisher and/or administrator for one or more of the infringing writers of "I Wanna Thank Ya" and/or "Nasty Girl."

20.    Defendant Universal Music Publishing International Limited is a corporate entity and music publisher. Upon information and belief, Universal Music Publishing International Limited has a regular and established place of business in New York, conducts systematic and continuous business in this District, and serves as a publisher and/or administrator for one or more of the infringing writers of "I Wanna Thank Ya" and/or "Nasty Girl."

21.    Defendant Bad Boy Records, LLC is a corporate entity and record label with its principal place of business in New York. Upon information and belief, Bad Boy Records, LLC manufactured, distributed, and commercially exploited the infringing sound recording "Nasty Girl" and has generated substantial revenue from its exploitation in New York.

22.    Defendant Phalon Anton Alexander, professionally known as Jazze Pha, is an individual. Upon information and belief, Mr. Alexander is a producer and/or songwriter who intentionally copied Plaintiffs' work to create the infringing musical compositions and sound recordings "I Wanna Thank Ya" and "Nasty Girl." Upon information and belief, Mr. Alexander conducts systematic and continuous business in this District and has generated substantial revenue from the exploitation of the infringing works in New York.

23.    Defendant Sean John Combs, professionally known as Diddy, is an individual. Upon information and belief, Mr. Combs resides in and/or conducts systematic and continuous business in New York. He is credited as a performer and/or songwriter of the infringing musical composition and sound recording "Nasty Girl" and has generated substantial revenue from its exploitation in New York.

8

24.    Defendant Calvin Cordozar Broadus Jr., professionally known as Snoop Dogg, is an individual. Upon information and belief, Mr. Broadus conducts systematic and continuous business in New York. He is credited as a performer and/or songwriter of the infringing musical composition and sound recording "I Wanna Thank Ya" and has generated substantial revenue from its exploitation in New York.

25.    Defendant Cornell Iral Haynes Jr., professionally known as Nelly, is an individual. Upon information and belief, Mr. Haynes conducts systematic and continuous business in New York. He is credited as a performer and/or songwriter of the infringing musical composition and sound recording "Nasty Girl" and has generated substantial revenue from its exploitation in New York.

26.    Defendant The Estate of Christopher George Latore Wallace (the "Estate of Notorious B.I.G."), professionally known as The Notorious B.I.G., is the legal estate of the deceased recording artist. Upon information and belief, the Estate of Notorious B.I.G. conducts systematic and continuous business in New York. The late Mr. Wallace is credited as a performer and/or songwriter of the infringing musical composition and sound recording "Nasty Girl," and his estate has generated substantial revenue from its exploitation in New York.

27.    Defendant The Estate of Angela Laverne Stone (the "Estate of Angie Stone"), professionally known as Angie Stone, is the legal estate of the deceased recording artist. Upon information and belief, the Estate conducts systematic and continuous business in New York. The late Ms. Stone is credited as a performer and/or songwriter of the infringing musical composition and sound recording "I Wanna Thank Ya," and her estate has generated substantial revenue from its exploitation in New York.

## "SKATIN'" BACKGROUND

28.     In 1979, Plaintiffs David Bravo and Albert Renaud White co-wrote the original musical composition entitled "Skatin'."

29.     The musical composition was officially registered with the United States Copyright Office under the title "Skating," with an effective registration date of December 17, 1979, and Registration No. PAu 160-397. The Copyright Registration Certificate is attached to this Complaint as **Exhibit C**.

30.     In 1980, the composition was recorded and released on Eumir Deodato's album "Night Cruiser" through Warner Brothers Records.

31.     Pursuant to a 1980 Songwriter's Agreement initially entered into with Kenya Music, Inc. (which was subsequently acquired by Defendant Sony Publishing), Plaintiffs transferred legal title to the copyright in exchange for ongoing royalties.

32.     Consequently, Plaintiffs are the beneficial owners of the copyright in the musical composition "Skatin'," granting them standing to sue for infringement.

## INTENTIONAL COPYING OF "SKATIN'"

33.     Upon information and belief, in 2004 and 2005, producer Phalon Anton Alexander, p/k/a Jazzy Pha, unlawfully sampled and copied the underlying musical composition of "Skatin'" to serve as the complete backing track for two new songs as described in more detail below.

34.     First, Defendants Jazze Pha, the Estate of Angie Stone, and Snoop Dogg, acting in concert with the Defendant Sony Music Entertainment (as successor-in-interest to J Records) and Defendants Sony Publishing, Warner Chappell Music, Inc., and Universal Music Publishing International Limited, utilized the unauthorized sample to create the song "I Wanna Thank Ya," performed and recorded by Angie Stone featuring Snoop Dogg, released in 2004.

10

35.    A year later, Defendants Jazze Pha, Diddy, Nelly, and the Estate of Notorious B.I.G., acting in concert with Defendants Bad Boy Records, LLC, Universal Music Publishing International Limited, Sony Publishing, and Warner Chappell Music, Inc., utilized the exact same unauthorized sample of "Skatin'" to create the hit track "Nasty Girl," performed and recorded by the aforementioned artists and released in 2005.

36.    Defendants Jazze Pha, Diddy, Snoop Dogg, Nelly, the Estate of Notorious B.I.G., the Estate of Angie Stone, Bad Boy Records, LLC, Sony Music Entertainment, Universal Music Publishing International Limited, and Warner Chappell Music, Inc. are the writers, composers, producers, performers, record labels, distributors, and publishers involved with the unlawful reproduction, distribution, and exploitation of the infringing works "I Wanna Thank Ya" and "Nasty Girl." These specific parties are collectively referred to herein as the "Infringing Defendants."

37.    The Infringing Defendants did not seek, nor did they receive, any permission, clearance, or license from Plaintiffs to copy, interpolate, or sample "Skatin'" for the creation of these derivative works.

## SUBSTANTIAL SIMILARITY BETWEEN THE INFRINGING WORKS AND "SKATIN'"

38.    The substantial similarities between "Skatin'" and the infringing works are undeniable and surpass any generic coincidence. As detailed in the expert report by renowned musicologist Thomas Z. Shepard, dated February 15, 2025, it is "inarguable" that the infringing tracks "represent the literal re-recording and re-use of the harmonic, rhythmic and melodic underpinning" of Plaintiffs' original composition. This report is attached to the Complaint as **Exhibit D**.

11

39.    Specifically, Mr. Shepard's analysis demonstrates that the Defendants unlawfully copied a constellation of distinctive compositional elements, including the exact four-bar (measure) structure in 4/4 time.

40.    In other words, musical pieces are divided into groups of beats known as "bars" or "measures." By pointing out the exact "four-bar structure in 4/4 time," the expert is explaining that the Infringing Defendants did not just borrow a vague feeling or musical style. Rather, they lifted a highly specific, four-measure block of music, with each measure containing four beats, that holds the song's foundational chords, precise rising left-hand notes (arpeggios), and exact right-hand melody. The Infringing Defendants took this exact 16-beat musical blueprint and simply looped it over and over again to serve as the complete instrumental backing track for their own songs.

41.    The infringing works also replicate the fundamental chord progression of "Skatin'," specifically utilizing the A-flat major 7th chord in the first two bars descending to the G7 chord in the third and fourth bars.

42.    In other words, a "chord" is a group of multiple musical notes played together at the same time to create a specific harmony, and a "chord progression" is the sequence of those harmonies that gives a song its underlying mood and emotional foundation. By identifying the exact shift from the "A-flat major 7th" chord down to the "G7" chord, the expert is confirming that the Infringing Defendants stole the precise, sophisticated harmonic sequence that gives "Skatin'" its unique musical identity.

43.    The theft extends to granular, literal replication of the composition. Mr. Shepard's report maps out how the left hand arpeggiates upwards on the A-flat major 7th chords for the first two beats of the first two bars, and similarly arpeggiates the G7 chord for the first two beats of the third and fourth bars.

12

44.     In other words, to "arpeggiate" means to play the individual notes of a chord one after another in a rippling sequence, rather than hitting all the keys at the exact same time. Furthermore, the expert notes that the left hand plays this upward sequence for the first two beats and then intentionally plays nothing for the third and fourth beats of the measure. By highlighting this, the expert is explaining that the Infringing Defendants did not just happen to use the same underlying harmonies. They deliberately copied the exact, precise finger movements, rhythmic pauses, and unique piano-playing style that Mr. Bravo used to create the backing track.

45.     Furthermore, the right-hand melody is identical, utilizing the G above middle C for bar one tied to the first half of bar two, ending with a quarter note A-flat above middle C, before moving down to F above middle C in bar three.

46.     In other words, the "melody" is the recognizable main tune of the song, which Mr. Bravo played with his right hand on the keyboard. "Middle C" is simply a central reference point on a piano, and the letters (G, A-flat, and F) refer to the precise keys being pressed. When the expert states that a note is "tied," it means the musician strikes the key and holds it down continuously across the beats without lifting their finger. By pointing out these exact keys and the precise duration each key is held down (such as a "quarter note," which lasts for exactly one beat), the expert is showing that the Infringing Defendants did not just happen to write a similar tune. They exactly duplicated the specific sequence of keys, the precise pitches, and the exact timing of Mr. Bravo's original right-hand performance.

47.     Furthermore, the Infringing Defendants' blatant copying of Plaintiffs' work is so substantial that it is readily recognizable to ordinary observers and independent music journalists. For example, in an October 2009 article and broadcast published by Radio Milwaukee, the author explicitly identified the source of the unauthorized sample in "I Wanna Thank Ya," noting that

13

Jazze Pha provided the beat, but the "groovin'" track got its funk from a Brazilian producer and musician by the name of Eumir Deodato (this article is attached hereto as **Exhibit E**). This independent observation confirms that the musical inspiration and foundational production of the infringing work is a direct, recognizable appropriation of Plaintiffs' composition.

## UNAUTHORIZED RELEASE AND EXPLOITATION

48.    Defendants have exploited the unauthorized derivative works to staggering commercial success while systematically denying Plaintiffs any songwriter credit or compensation.

49.    Upon information and belief, both "Nasty Girl" and "I Wanna Thank Ya" have achieved immense commercial success and widespread digital exploitation. "Nasty Girl" has sold at least 1 million certified CD units, has been streamed over 274 million times on Spotify, and its official music video has garnered over 156 million views on YouTube. Similarly, "I Wanna Thank Ya" has generated over 3.5 million streams on Spotify and over 166,000 views on YouTube. The revenue derived from the global exploitation of these infringing works, including but not limited to domestic and international record sales, digital streams, public performances, and licensing, is staggering.

50.    Despite this massive commercial exploitation, Plaintiffs were never credited on the songs, nor have they been paid a single cent in royalties or advances for the unauthorized use of their composition.

## SONY PUBLISHING BAD FAITH

51.    Upon discovering the infringement around May 2024, Plaintiffs turned to their publisher, Sony Publishing, expecting them to advocate on their behalf.

14

52.   Under Paragraph 1 of the 1980 Songwriter's Agreement, Plaintiffs transferred "all right, title and interest" in the copyright to Sony Publishing's predecessor-in-interest. By acquiring exclusive legal control over the copyright, Sony Publishing accepted a fiduciary duty and an implied covenant of good faith and fair dealing to actively protect, enforce, and defend Plaintiffs' interests against unauthorized exploitation so that Plaintiffs could receive their bargained-for royalties.

53.   Furthermore, Paragraph 11 of the Agreement dictates that any legal action initiated by the Publisher against an infringer shall be prosecuted at its "sole expense," ensuring the writers receive 33.3% of any recovery.

54.   However, Sony Publishing blatantly stonewalled Plaintiffs and flagrantly disregarded its implied and fiduciary duties to protect their life's work. Sony Publishing explicitly admitted that it has a "conflict of interest" in advocating for Plaintiffs because it also holds an interest in "Nasty Girl" through five or more of the other seventeen credited writers on the infringing track.

55.   Sony Publishing's bad faith and disparate treatment of Plaintiffs is further evidenced by the publisher Defendants' handling of other samples on the exact same infringing work. For example, the publisher Defendants properly cleared a mere one-word sample from a composition by the band Duran Duran used in "Nasty Girl," awarding those writers a 10% ownership interest in the song. Yet, Sony Publishing deliberately turned a blind eye to the unauthorized use of Plaintiffs' four-bar foundational backing track. This flagrant disparity highlights that Sony Publishing's refusal to protect Plaintiffs' copyright was not an administrative oversight, but a calculated decision to maximize the profits of its other lucrative clients at the direct expense of Plaintiffs.

56.    Sony Publishing's refusal to pursue the infringement action was not based on a good-faith assessment of the merits of the claim, but rather on its own self-interest. Choosing to protect its highly lucrative clients at the direct expense of its duties to Plaintiffs, Sony Publishing acted in bad faith and deliberately aligned itself with the infringers. Sony Publishing's refusal to advocate for the creators of the foundational backing track has forced Plaintiffs to drain their life savings to bring this action themselves.

## A PATTERN AND PRACTICE OF WILLFUL INFRINGEMENT

57.    The Infringing Defendants' failure to clear the sample of "Skatin'" is not an isolated oversight or an innocent mistake. Rather, it is part of a long-standing, well-documented pattern and practice by the Infringing Defendants of blatantly disregarding the intellectual property rights of independent creators and intentionally sampling copyrighted works without authorization or compensation.

58.    For instance, Defendant Sean "Diddy" Combs and Defendant Bad Boy Records, LLC have a well-documented history of willful copyright infringement. In 1997, Mr. Combs famously sampled The Police's "Every Breath You Take" for his hit "I'll Be Missing You" without seeking permission until after the song was released. In 2006, in *Bridgeport Music, Inc. v. Justin Combs Publ'g*, a federal jury found that Mr. Combs and Bad Boy Records illegally used an unauthorized sample of the Ohio Players' song "Singing In The Morning" on the Notorious B.I.G.'s album "Ready to Die." 507 F.3d 470, 477 (6th Cir. 2007). The jury awarded $4.2 million in punitive and direct damages, and the federal judge halted the sales of the album. *Id.* at 476. *Judge Halts Sales of Notorious B.I.G. Album After Jury Finds Song Snippet Used Without Permission*, THE BRYAN TIMES (Mar. 24, 2006), https://news.google.com/newspapers?id= VvkvAAAAIBAJ&sjid=iUkDAAAAIBAJ&pg=5587%2C2536180.

59.    The other Infringing Defendants share this disregard for copyright law. Defendant Snoop Dogg recently faced a 2024 federal copyright lawsuit (Complaint at 5, *Lawrence v. Snoop Dogg*, No. 24-5947 (C.D. Ca. 2024)) for incorporating unlicensed backing tracks into his 2022 album "B.O.D.R." Similarly, the catalog of the late Notorious B.I.G. has been the subject of multiple infringement actions for unauthorized appropriations, including a 2016 lawsuit by The Last Poets over stolen lyrics. *Oyewole v. Ora*, No. 16-cv-1912 (AJN) 1, 2-3, 20-21 (S.D.N.Y. 2018).

60.    This history of infringement litigation demonstrates that the Infringing Defendants are highly sophisticated music industry entities who are well aware of the legal requirements for clearing samples. Their decision to utilize Plaintiffs' composition in "I Wanna Thank Ya" and "Nasty Girl" without authorization was a calculated, willful, and malicious business decision, justifying an award of maximum statutory and punitive damages.

## COUNT I

## COPYRIGHT INFRINGEMENT ASSERTED AGAINST INFRINGING DEFENDANTS

61.    Plaintiffs repeat and reallege each and every allegation of the foregoing paragraphs as though fully set forth herein.

62.    Plaintiffs are the beneficial owners of the U.S. copyright in all rights, titles, and interests in the musical composition "Skatin'" co-written by David Bravo and Albert Renaud White. The musical composition is properly registered with the United States Copyright Office.

63.    The Infringing Defendants' unauthorized reproduction, distribution, public performance, display, and creation of derivative works of "Skatin'" infringes Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

17

64. Specifically, the Infringing Defendants did not seek or receive permission to copy, interpolate, or sample any portion of "Skatin'" to physically create, record, and release the infringing derivative works "I Wanna Thank Ya" and "Nasty Girl."

65. Furthermore, as set forth herein, the claims against the remaining publisher Defendants, Warner Chappell Music, Inc. and Universal Music Publishing International Limited, arise directly from their unauthorized administration, licensing, and commercial exploitation of the aforementioned infringing works.

66. Although the infringing works "I Wanna Thank Ya" and "Nasty Girl" were originally released in 2004 and 2005, Plaintiffs, a 73-year-old jazz keyboardist and an 84-year-old classic Soul musician and a military veteran, were completely removed from the 2000s hip-hop and rap markets and did not consume such music. Furthermore, Plaintiffs reasonably relied upon their publisher, Defendant Sony Publishing, to protect their catalog from unauthorized uses. Because these factors prevented earlier detection, Plaintiffs' discovery of the infringement in May 2024 is well within the three-year copyright statute of limitations, and in accordance with the United States Supreme Court's decision in *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024), there is no limit on how far back Plaintiffs can go in pursuit of monetary damages.

67. The Infringing Defendants' conduct has at all times been knowing, willful, and with complete disregard for Plaintiffs' rights.

68. The infringing works copy quantitatively and qualitatively distinct, important, and recognizable portions of "Skatin'." Specifically, the Infringing Defendants copied a constellation of distinctive compositional elements, including the entire four-bar foundational backing track, chord progression, and melody, the inclusion of which greatly enhances the musical and financial value of the infringing works.

69. With knowledge of the infringement, the Infringing Defendants have induced, caused, or materially contributed to the infringing conduct of others, such that they should be found contributorily liable.

70. The Infringing Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that they should be found vicariously liable.

71. The infringement is continuing as the albums and singles for both "I Wanna Thank Ya" and "Nasty Girl" continue to be sold, streamed, licensed for sale, downloaded, and otherwise exploited by the Infringing Defendants or their agents.

72. As a direct and proximate result of the conduct of the Infringing Defendants, Plaintiffs have suffered actual damages including lost profits, lost opportunities, and loss of goodwill.

73. Pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to damages, including the substantial profits of the Infringing Defendants, as will be proven at trial.

74. In the alternative, pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages of $150,000 per infringement.

75. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

76. The Infringing Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in monetary terms. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the reproduction, distribution, sale,

public performance, and other exploitation of "I Wanna Thank Ya" and "Nasty Girl," including all infringing derivative works, in any and all formats, configurations, and/or media.

## COUNT II

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

## ASSERTED AGAINST DEFENDANT SONY PUBLISHING

77.     Plaintiffs repeat and reallege each and every allegation of the foregoing paragraphs as though fully set forth herein.

78.     Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

79.     The 1980 Songwriter's Agreement is a valid and binding contract between Plaintiffs and Defendant Sony Publishing (as successor-in-interest to Kenya Music, Inc.). Plaintiffs bring this claim for breach of the covenant of good faith and fair dealing based upon Sony Publishing's failure to adhere to its legal, contractual, and ethical obligations to Plaintiffs.

80.     Each and every express contractual term set forth in the 1980 Songwriter's Agreement carries with it the duty to exercise that right fairly and in good faith. For instance, Sony Publishing explicitly agreed under Paragraph 11 of the 1980 Songwriter Agreement that any legal action brought against infringers of "Skatin'" shall be initiated and prosecuted at its sole expense.

81.     Sony Publishing has substantial discretionary power affecting Plaintiffs' rights with respect to the events alleged herein, and is required to exercise such power in good faith. Had Sony

20

acted in good faith, it would have brought an action asserting that "I Wanna Thank Ya" and "Nasty Girl" were infringing works.

82.    Not only did Sony fail to bring this action, which is necessary to carry out Sony's duties to protect the copyright so Plaintiffs can receive the fruits of their contract with Sony, but Sony deliberately refused to do so based on an admitted "conflict of interest." Sony intentionally chose to prioritize the financial interests of its other lucrative writers on "Nasty Girl," deliberately turning a blind eye to the theft of Plaintiffs' work while actively protecting and clearing other samples (such as the Duran Duran sample) on the exact same track.

83.    By this conduct, Sony breached its implied covenant of good faith and fair dealing.

84.    As a result of these breaches of the covenant of good faith and fair dealing, Plaintiffs have suffered injury and will continue to suffer significant economic losses as detailed herein. Plaintiffs have also incurred and will continue to incur attorneys' fees, expert fees, and other costs and expenses as a result of the bad-faith conduct of Sony.

## COUNT III

## BREACH OF FIDUCIARY DUTY ASSERTED AGAINST DEFENDANT SONY PUBLISHING

85.    Plaintiffs repeat and reallege each and every allegation of the foregoing paragraphs as though fully set forth herein.

86.    At all relevant times, Defendant Sony (as successor-in-interest to Kenya Music, Inc.) created, accepted, and acted in a fiduciary relationship with, and for the benefit of, Plaintiffs.

87.    This fiduciary relationship is based on trust and confidence, as well as the express contractual obligations under the 1980 Songwriter's Agreement wherein Plaintiffs transferred legal title of "Skatin'" to the Publisher in exchange for the administration of the copyright and the

21

collection of royalties. The fiduciary relationship required Sony to, at all times, act in the best interests of Plaintiffs.

88.     By virtue of this special relationship, Plaintiffs had confidence in the fidelity and integrity of Sony and entrusted Sony with legal control and portions of their financial affairs, thereby creating a confidential relationship which existed at all times relevant to this action. Consequently, Sony owed Plaintiffs a strict fiduciary duty to put the interests of the creators of "Skatin'" before its own.

89.     Despite having voluntarily accepted the trust and confidence of Plaintiffs, Sony breached its fiduciary duties owed to Plaintiffs by, among other things: (1) failing to protect, enforce, and raise claims based on Plaintiffs' copyright which Sony was entrusted to administer; (2) failing to remain neutral when faced with an admitted conflict of interest; (3) giving strong, biased support to the Infringing Defendants, five or more of whom Sony also represents on "Nasty Girl," to the direct detriment of Plaintiffs; and (4) deliberately ignoring the unauthorized theft of Plaintiffs' foundational backing track while actively clearing and compensating a one-word sample from the band Duran Duran on the exact same infringing work.

90.     As a direct and proximate consequence and result of the aforementioned acts and breach of their fiduciary duties by Sony, Plaintiffs have sustained actual damages, including lost royalties and out-of-pocket expenses, in an amount not yet ascertained, but to be proven at trial.

91.     Sony's actions in this matter have been willful, knowing, malicious, and oppressive, demonstrating a conscious disregard for Plaintiffs' rights. Therefore, Plaintiffs are entitled to recover, in addition to actual damages, punitive damages to make an example of and punish Sony and to deter similar corporate misconduct in the future.

22

## COUNT IV

## BREACH OF CONTRACT ASSERTED AGAINST DEFENDANT SONY MUSIC

## PUBLLISHING

92.    Plaintiffs repeat and reallege each and every allegation of the foregoing paragraphs as though fully set forth herein.

93.    The 1980 Songwriter's Agreement constitutes a valid and binding contract between Plaintiffs and Defendant Sony (as successor-in-interest to Kenya Music, Inc.). At the time the parties entered into the Agreement, they were legally capable of contracting; there was mutual consent, a lawful objective, and sufficient consideration.

94.    Plaintiffs have fully performed all of their obligations as required by the 1980 Songwriter's Agreement, including transferring all right, title, and interest in "Skatin'" to the publisher. Sony has accepted and benefited from Plaintiffs' performance and the ongoing exploitation of the catalog under the Agreement, which includes "Skatin'."

95.    Sony has materially breached the terms of the 1980 Songwriter's Agreement by refusing and failing to bring a legal action against the Infringing Defendants, and by acting to the direct detriment of Plaintiffs. Specifically, Sony breached the intent and obligations established by the Agreement, including Paragraph 11, which dictates Sony's role and financial responsibilities in prosecuting infringers, by abandoning its obligation to administer and protect the copyright due to an admitted conflict of interest with the Infringing Defendants.

96.    As a direct and proximate result of Sony's material breach, Plaintiffs have sustained significant financial damages in an amount not yet ascertained, but to be proven at trial. This includes, but is not limited to, the substantial out-of-pocket costs, expert fees, and attorneys' fees

23

Plaintiffs have been forced to incur to enforce their own rights, which Sony was contractually obligated to handle at its "sole expense" under Paragraph 11 of the 1980 Songwriter's Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs David Bravo and Albert Renaud White pray for judgment against Defendants and for the following relief:

A.    A declaration that the Infringing Defendants have willfully infringed Plaintiffs' copyrighted works in violation of the U.S. Copyright Act of 1976;

B.    A declaration that the Infringing Defendants are directly, vicariously, and/or contributorily liable for copyright infringement, as applicable;

C.    A permanent injunction requiring the Infringing Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiffs' rights protected by the Copyright Act;

D.    An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the profits of the Infringing Defendants as will be proven at trial. These damages and profits shall include all revenue resulting from the exploitation of the infringing works domestically and internationally, including any and all income derived from any existing medium or collection society worldwide; or in the alternative, maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each act of infringement;

E.    On the counts for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and breach of contract asserted against Defendant Sony Publishing, compensatory and special damages in accordance with proof at trial;

24

F.      For punitive damages against Defendant Sony where available under the law;

G.      An award of attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and under other applicable law;

H.      For pre-judgment and post-judgment interest according to law, as applicable; and

I.      For such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiffs respectfully demand a trial by jury.


Dated: _____ __, 2026

ADWAR IVKO
Attorneys for Plaintiffs


By: /s/ Polina Ivko
Polina Ivko, Esq.
515 Madison Ave Fl 6
New York, NY 10022
Tel. (332) 203-3347
*polina@adwarivko.com*

25